BURKS. J.,
delivered the opinion of the court.
*This is an application to this court to issue a writ of mandamus to compel the Honorable William I. Clopton, judge of the hustings court of the city of Manchester, to sign several bills of .exceptions tendered by the relator, Samuel M. Page, to a judgment for a fine imposed on him for an alleged contempt by misbehavior in the presence of the said court.
Original jurisdiction to issue^writs of mandamus and prohibition to the circuit and corporation courts, and the hustings court and chancery court of the city of Richmond, and in all other causes in which it may be necessary to prevent a failure c’f justice, in which a mandamus may issue according to the principles of the common law, is conferred upon this court by statute enacted 'pursuant to the constitution of the state; and it is provided that “the practice and proceedings upon such writs shall be governed and regulated in all cases by the principles and ■.practice now prevailing in respect to writs of mandamus' and prohibition, respectively.” Code of 1873, ch. 156, § 4; Con. of Virginia, art. 6, § 2.
For the pleadings and practice in writs of mandamus as regulated by statute, see Code of 1873, ch. 151.
This court refused to award the mandamus applied for in Barnett v. Meredith, 10 Gratt. 650, because neither the constitution of 1850 nor the statute then in force conferred the jurisdiction to award the writ. The provisions of the present constitution in relation to the awarding of such writs are substantially the samé as those contained in the constitution of 1850, but the present statute expressly confers the jurisdiction which the former statute did not confer.
The office of the writ of mandamus is to compel corporations, inferior courts and officers to perform some particular duty incumbent upon them, and which is imperative in its nature, and to the performance of which' *the relator has a clear legal right, without any other adequate specific legal remedy, to enforce it; and even though he may have another specific legal remedy, if such remedy be obsolete or inoperative, the mandamus will be granted. 6 Bac. Abr. (Bourrier’s ed.) 418; Broom’s Leg. Max. 192, note; Carr, J., in King William Justices v. Munday, 2 Leigh, 168-9. Ihe remedy is extraordinary, and if the right is doubtful, or the duty discretionary, or there be any other adequate specific legal remedy in use, this writ will not be allowed.
Lord Mansfield is authority for saying that “it was introduced to prevent a failure of justice and defect of police; therefore,” said he, “it ought to be used upon all occasions where the law has established no specific remedy, and where in justice and good government there ought to be one.” Rex v. Barker, 3 Burr. R. 126.
In relation to courts and judicial officers, it cannot be made to perform the functions of a writ of error or appeal, or other legal proceeding to review or correct errors, or to anticipate and forestall judicial action. It may be appropriately used and is often used to compel courts to act where they refuse to act and ought to act, but not to direct and control the judicial discretion to be exercised in the performance of the act to be done; to compel courts to hear and decide where they have jurisdiction, but not to pre-determine the decision to be made; to require them to proceed to judgment, but not to fix and prescribe the judgment to be rendered.
These principles are recognized and illustrated by multitudes of decisions, English and American. Some made by this court and the general court of this state, and by the supreme court of the United States, are here cited: Com. v. Justices of Fairfax Co., Ct. 2 Va. Cas. 9; Dawson v. Thurston & others, 2 Hen. & Mun. 132; Brown v. Crippen & Wise. 4 Hen. & Mun. 173; King William Justices v. Munday, 2 Leigh. 165: Harrison v. Emmerson *& others, Id. 764; Mann v. Givens & others, 7 Leigh, 689; Morris, ex parte, 11 Gratt. 292, 297; Yeager, ex parte, Id. 655; Randolph Justices v. Stalnaker, 13 Gratt. 523; *147 Comon. v. Fulton, judge, 23 Gratt. 579; Kent, Paine & Co. v. Dickinson, judge, 25 Gratt. 817; United States v. Lawrence, 3 Dall. R. 42; Ex parte Crane, 5 Pet. R. 190; Ex parte Roberts, 6 Pet. R. 216; Ex parte Bradstreet, 7 Pet. R. 634; Ex parte William Hany, 14 How. U. S. R. 24; Life & Fire Ins. Co. v. Wilson’s Heirs, 8 Pet. R. 291; Life & Fire Ins. Co. v. Adams, 9 Pet. R. 571, 592; Ex parte Hoyt, 13 Pet. R. 279; Ex parte Cutting. 94 U. S. (4 Otto), 14.
Our statutes provide that “a party in a criminal case, or proceeding for contempt, for whom a writ of error lies to a higher court, may except to an opinion of the court and tender a bill of exceptions, which (if the truth of the case be fairly stated therein), the judge, judges or justices, or the greater part of those present, shail sign; and it shall be a part of the record of the case;” and that a writ of error shall lie “to a judgment for a contempt of court, other than for the non-performance of or disobedience to a judgment, decree or order.” A similar provision is made for allowing bills of exceptions in the trial of civil cases “in which an appeal, writ of error or supersedeas lies to a higher court.” Code of 1873. ch. 203. §§ 1, 4; ch. 173, § 8.
In either of the cases in which bills of exceptions are allowed, that is, in the trial of a case at law, or in a criminal case or proceeding for contempt in which a writ of error lies to a higher court, if a party excepts, as he may, to an opinion of judgment of the court in due time, and tenders in due time his bill of exceptions, the judge is required to sign tile bill, “if the truth of the case be fairly stated therein.” If the conditions of the statute are satisfied, the right of the party is clear and the duty of the judge equally clear, and it is imperative. *He has no discretion in the matter. The language of the law is. he “shall sign.” If, in the case supposed, the jttdge refused to sign the bill, then, “according to the principles of the common law,” the party has the indubitable right to the writ c;f mandamus to compel him to sign, unless the law has provided some other adequate, specific remedy for the particular grievance — otherwise, there would be a palpable and essential failure of justice — for. a writ of error allowed would be futile and wholly inoperative quoad matters alleged in exceptions which are no part of the record. The enquiry then is. does the law provide any other specific remedy in such a case?
At common law, as we know, a writ of error lay for an error in law apparent in the record, and not for error in law not appearing in the record; and theréfore, where the parties, plaintiffs or defendants, alleged anything ore temis, which was overruled by the judge, it could not be assigned as error in law, because it did not appear in the record; and so the party grieved was without remedy. 2 Bac. Abr. (Bourrier’s ed. 1843), 112; 2 Inst. 426.
This was a grave defect in the. common law, for remedy whereof the English parliament passed the act of Westminster 2, 13, Edw. 1, ch. 31, whereby bills of exceptions-were allowed, by means whereof matters occurring in the trial of cases were made a part of the record, and were thus reached by : writ of error. This act, the body of which may be found in Bac. Abr. ubi supra, is-the model of the various statutes on the same subject in the United States, ft was adopted in Virginia, with slight modifications affecting the matter of jurisdiction (1 R. Code, ch. 133, § 1, p. 523), and was cut down to its present dimensions at the revisions of the laws in 1849.
The English act was construed as not extending to criminal cases, at least to cases of treason and felony *(2 Bac. Abr. 114), and hence the second section of our act in the Revised Code supra, which provides for bills of exceptions in criminal cases also. The bill of exceptions under the English statute formed no part of the record of the case until made so by proceedings had in conformity to the statute. As soon as the bill was signed, a writ' was issued to the judge who signed the bill, framed upon the statute, called scire facias ad cognoscendum [ scrip turn, summoning him, as the terms im- | ply, to appear and confess the writing or I deny it. If he appeared and confessed his seal, or denied it, and proof of it was made,
, the bill was entered on the issue roll and : thus made a part of the record. This writ I was never used in Virginia, because, in 1 practice, the judge who signed the bill at the same time ordered it to be enrolled and made a part of the record. By the statute as it now stands, the bill when signed becomes by express provision “a part of the record.”
Such was the permission under the statute to make a bill of exceptions, which had been duly sealed, a part of the record. But while ihe act in terms provided, that if the party impleaded (cum aliquis implacitatur, &c.) “doth allege an exception, praying that the justices will allow it if they will not allow it, and he that allegeth the exception do write the same exception, and require that the justices will put their seals in testimony thereof, the justices, or the greater part of hem present, shall do so.” Yet it did„not expressly provide for any writ or process to compel them to seal the bill. The act, however, being mandatory, it was considered that a writ grounded on the statute might be framed to compel the performance of this duty. Such peculiar writ, nameless it would seem, was accordingly devised, and the form of it. we are told, mav be seen in the Registrum Brevium, 182, pronounced by Lord Coke to be the oldest book in the law. We have not access to “that most ancient and *highly venerable collection of legal forms (3 Bl. Com. 183). but in the case of Conrow re Stroud, decided by the supreme court of Pennsylvania in 1867, cited in argument, we find in the report of the case in 6 Amc. Law Reg. (U. S-). 298. the form of a writ used in that case, “which was adopted.” it is said by the editor, “from the ancient writ found in the Registrum Brevium.” See *148 form also in Robinson’s Forms, ed. 1841, p. 343.
This ancient writ, according to Buller’s Nisi Prius, 5th Eng. ed. 316, recites the form of an exception taken and overruled, and it follows, “vobis prascipimus, quod si ita est, tunc sigilla vestra apponatis;” and if it be returned “quod non ita est,” an action will lie for a false return, and thereupon the surmise will be tried, and if found to be so (si ita est), damages will be given, and upon such a recovery, a peremptory writ commanding the same.
This writ, it is said, has occasionally issued out of the English chancery, and was never known to issue from the king’s bench, though there is no case denying to that court the power to award it. In Sikes v. Ransom, 6 Johns. R. 279, the supreme court of .New York speaks of it as, “in effect, a writ of mandamus,” and so treated it in that' case. In Exparte Crane, 5 Pet. R. 190, 218, Mr. Justice Baldwin, who dissented from the other judges in the case, speaks of it as “a special writ from chancery, returnable before the king in chancery, reciting the mandatory parts of the statute of Westminister,” and he insisted that there was “a specific and legal remedy by action on the statute, for a false return, and a special action on the case, if the judges refuse to seal the bill of exceptions when duly taken and tendered.” and, therefore, that mandamus would not lie to compel a judge to sign and seal a bill of exceptions. In the same case, however (p. 194). Chief Justice Marshall, in whose opinion all the associate justices concurred except Justices Baldwin *and Johnson, said, “that a mandamus to sign a bill of exceptions is warranted by the principles and usages of the common law, is, we think, satisfactorily proved by the fact that it is given in England by statute; for the writ given by the statute of Westminister the Second, is so in. fact, and is so termed in the books.” In repeated decisions after-wards, the supreme court of the United States followed this decision, and the appellate courts of the several states (unless, perhaps, Pennsylvania may be an exception), where this or similar statutes are in force, seem to pursue the same course of decision. We have seen no case where the statutory writ in forma is adopted, except the case before cited from Pennsylvania, and the writ used in that case seems to be in substance a mandamus nisi.
This court has never been called upon until now to determine the proper remedy to compel a judge to sign a bill of exceptions when tendered. The question was discussed by Judge Baldwin in Taliaferro v. Franklin, 1 Gratt. 332, and he there expressed the opinion that the proper remedy was by special writ grounded on the statute, and that this court might frame the writ under power conferred bv the. Code. 1 Rev. Code. ch. 64, _ § 23, p. 123. (See corresponding provision in Code of 1873, ch. 157, § 4. p. 1054.) The other judges (Allen and Cabell) who sat with him, declined to exnress any opinion on the question, Judge Allen saying, “it is not necessary to decide it here, and as the question is one of great interest in practice, I should prefer postponing it until we can have the aid of a full court and the benefit of an argument on the very point;” Judge Cabell using substantially the same language: See suggestions of Mr. Leigh, arguendo, Vaughn v. Green, 1 Leigh, 287, 292; Tucker, P., Jackson’s adm’x v. Henderson, 3 Leigh, 196, 215, 216.
If the writ framed under the statute of Westminister *2 be the technical legal remedy to compel a judge to sign a proper bill of exceptions duly tendered, and such remedy may be resorted to under our statutes in their present form, applying as well to criminal as civil cases, still it is obsolete, and if put in force, we are of opinion, for the reasons already assigned, it would be, at least in effect, if not in fact, a writ of mandamus as used and applied at common law.
This case is heard on the petition of the relator and exhibits filed therewith, the rule awarded on the petition against the respondent, and the return of the respondent to the rule and the exhibits filed with the return. There is no plea or demurrer to the return, and no exception filed by either party. In this condition of the case, “according to the principles and practice now prevailing in respect to writs of mandamus,” and our statutory regulations on the subject, there being ho traverse of the return, it must be taken as true.
In Exparte Newman, 14 Wall. U. S. R. 152, 166, Mr. Justice Clifford thus states the rules and principles of pleading in such cases: “Due service of the rule beingmade, the judge is required to make return to the charge contained in the rule, which he may do by denying the matters charged, or by setting up new matter as an answer to the accusations of the relator, or he may elect to submit a motion to quash the rule, or to demur to the accusative allegations. Matters charged in the rule and denied by the respondent must be proved by the relator, and matters alleged in avoidance of the charge made, if denied by the relator, must be proved by the respondent. Angell & Ames on Cor. 9th ed. § 727; Cagger v. Supervisors of Schuylkill, 2 Abbott’s Prac. N. S. 78. Motions to quash in such cases are addressed to the discretion of the court, but if the respondent demurs to the rule, or if the relator demurs to the return, the party demurring admits everything in the rule or the return, as the *case may be, which is well pleaded, and if the relator elects to proceed to hearing on the return, without pleading to the same in any way, the matters alleged in the return must be taken to be true to the same extent as if the relator had demurred to the return. Tapping on Mandamus. 347; Moses on Mandamus. 210; Commercial Bank v. Commissioners, 10 Wend. R. 25; The People ex rel. Ryan v. Russell, 1 Abbott’s Prac. N. S. 230; Hannahan v. Board of Police, 26 N. Y. R. 316; Commonwealth ex rel. Middleton v. Commissioners, 37 Penn. St. R. 245; 3 *149 Stephen's Nisi Prius, 2326; 6 Bac. Abr. ed. 3856, 447.”
From the return and from such charges in the rule as are not controverted by the return, it appears, in substance, that during the session of the hustings court of the city of Manchester, held by the respondent as the judge of the said court on the 22d day of March. 3 878, the respondent imposed a fine of fifteen dollars on the relator, who was engaged as counsel in the trial of a cause, for alleged contemptuous misbehavior in the presence of the court, and at the same time a motion was made by a member of the bar — not as counsel, however, it would seem — to remit the fine, which motion was continued generally to a further day of the term, without specifying any particular day; and on the 25th day of the same month the court overruled the motion and ordered the sergeant to take the relator into custody and so detain him until the fine be paid. The relator was present in court when the orders of the 22d and 25th of March were made, and no objection or exception was made or taken to the judgment or action of the court on either day. On the 27th day of the same month, and during the same term of the court, the relator, who had been taken into custody by the sergeant under the order of the 25th, and, to release himself from custody, had under protest paid the fine, appeared in court and offered *to except to the judgment imposing the fine, and moved the court to certify the facts on which the judgment was rendered, and that witnesses be called to testify as to those facts. In the language of the return, “the court was inclined and did offer, as a matter of favor, to certify the facts, which offer was rejected by the petitioner, and the motion to call witnesses to testify as to the facts was conducted in a manner so impertinent and unpleasant that the court was compelled, for the preservation of order, decorum, and the due administration of affairs in court, to decline to listen further, and to put the petitioner upon such recourse, if any he had, as the law gave him; and thereupon the petitioner, of his own motion, desired that the facts be certified by the court, which motion was then overruled.” It does not appear that any bill or bills of exceptions were tendered on Ihe said 27th day of March, but it does appear by the return that on the 30th day of March, the last day of the term of the court, the relator tendered ¡bree several bills of exceptions to the judgment. action and rulings of the court, which bills the court refused to sign. These three bills (and a fourth, which need not be noticed further, as the return denies that it was ever tendered and that its statements are true) are filed with the. petition, and the prayer is that the respondent be required by mandamus to sign them. The respondent, in his return, avers that these bills do not state truly the facts of the case, and he specifies wherein the statements are not true, but he does not say that when tendered he made known these objections, and offered, if the bills were corrected so as to remove the objections, to sign them as amended. On the contrary, as has been seen, when the relataron a previous day, the 27th of the month, made his exception and prayed the court to certify the facts, the respondent, for the reasons stated in his return and hereinbefore recited, refused to certify the facts, and determined to *“put the petitioner upon such recourse, if any he had, as the law gave him;” and he claims and urges in his return that the law gives the relator no recourse, because he did not except to the judgment of the court in due time; that he should have excepted on the 22d of the month, when the judgment for the fine was rendered, or at least on the 25th of the month, when the motion to remit the fine was overruled; and not having then excepted, he must be taken to. have acquiesced in the judgment and to have waived all objection or exception thereto, and therefore he could not be heard to object or except at a later day of the term.
As to the particular bills of exceptions filed with the petition, it is too clear to admit of doubt that the writ of mandamus cannot be used to compel the respondent to sign said bills. Ex parte Martha Bradstreet, 4 Peters’ R. 102. A judge is required by the statute to sign a bill of exceptions only on condition that “the truth of the case be fairly stated therein.” The statement in the return not traversed, that these bills do not contain the truth of the case, must be taken as conclusively true in this proceeding. But flic duty of a judge is not ended and fully discharged when he merely refuses to sign a particular bill tendered, on the ground that the truth of the case is not fairiy stated therein. He, should go further. He should proceed, with the aid of counsel, to settle the bill, and when settled, to sign it. Originally it was supposed that the judge was only bound to sign the bill when a true one was presented to him, and where there was any objection to it that he was not required to aid in its correction, and might, therefore, refuse to sign it. But the practice has for a long time been otherwise. Powell on Appellate Proceedings, ch. 5, § 20, p. 224.
If the bill presented is not truthful or fair, the judge should alter it and make it such, or suggest what alteration should be made. Where such alteration can be made in *lhe draft, or when necessary, he may require it to be redrafted in accordance with such suggestions; for he is not bound to sign a bill that is not truc. Id. ch. 5, § 34, p. 235.
If a judge, therefore, refuses to sign a proper bill, or to proceed to settle the matter of a bill objected to, he may, in either c '.se, be compelled by mandamus to act; but if he states in his return to the rule or mandamus nisi, that the particular bill presented does not contain the truth of the case, and therefore he refused to sign it, whether such statement must be taken as conclusive in the proceeding by mandamus, or whether it maybe traversed and the truth of the bill enquired' into and settled one way or the other, are questions which do not necessarily arise in the case before us, as there is no plea to or traverse of the return by the relator. The- *150 questions suggested are of great importance in practice. They have not been argued .in this case, and as it is not necessary to decide them now, we express no opinion upon them. See what is said, in Powell on Appellate Proceedings, ch. 5, § 63, p. 256, and High on Extraor. Leg. Rem. part 1, ch. 3, § 203, p. 159. and cases there cited by these authors.
When the relator in this case tendered the bills of exceptions filed with his petition, if the only objection to them had been that they did not state fairly the truth of the case, it would have been the duty of the respondent to specify the objections, and, in conjunction with the relator or his counsel, to amend the bills so as to present the case fairly, and when settled to sign them, and he may now be compelled by mandamus to proceed to do so, unless the relator has waived or lost his right to except by not exercising it at an earlier day.
Much depends on the practice of the court in the taking and noting exceptions, and drawing, presenting, settling and signing the bills, but the general rule seems *to be that, if intended to be relied on, exceptions should be taken and notice thereof given at the time the decision to which they apply is made, and in jury trials they should be taken at least before verdict. Wash. & New Orl. Teleg. Co. v. Hobson, 15 Gratt. 122, 138; Matz’s ex’or v. Matz’s heirs, 25 Gratt. 361; Peery’s adm’r v. Perry, 26 Gratt. 320, 334.
The usual practice is to give notice of the exception at the time the decision is made, and reserve liberty, with the permission of the judge, to draw up and present the bill for settlement and signature either during the trial or after trial and during the term, as may be allowed or directed by the judge. The bill- should be presented and signed at least during the term at which final judgment is entered in the suit or other proceeding in which the exception is taken, and it will be disregarded in the appellate court, if signed after the end of such term, although signed pursuant to a previous order allowing it, unless perhaps such order be made by consent of parties entered of record. Winston v. Giles, 27 Gratt. 530, 535.
One reason for the rule requiring this promptness in taking th,e exception and giving notice thereof is, that an exception taken and made known for the first time at a subsequent period might affect very injuriously the rights of the opposing party, for if he have seasonable notice of the exception, he may perhaps have it in his power at the time or during the trial to obviate or counteract it. and it would be unjust to allow his adversary to insist on the exception and have the benefit of it, after, by his own negligence, or it may be by his contrivance, he has made it impossible to meet it. Wash.
New Orl. Teleg. Co. v. Hobson (supra), 2 Tidd’s Prac. (9th ed.) 863. Another reason for the rule is, that the judge may note the matter of the exception while it is fresh in his mind, and *thus be enabled the better to settle the bill when it is presented for his signature.
The rule in its general operation is a wise one, but we do not think this case comes within the reason of the rule,'and cessante ratione legis cessat ipsa lex.
This is not the case of a suit inter partes. It was a summary judgment for contempt without the formality of a trial. It was wholly ex parte. The exception, of necessity, was to the judgment after it was rendered. There was no opposing party to be affected by it, who might have insisted on earlier notice of the exceptio'n and claimed that he was or .might have been injured for want of it. The matter was wholly between the relator and the judge. The judgment for the fine was entered on the 22d day of the month, and the -execution of it was, on motion, at once suspended. The motion was overruled on the 25th of the month, and the judgment then put into execution. Onthe second day thereafter, the 27th of the month, the relator asked to except. It is conceded that an exception on the 25th would have been in due time. It cannot be said that the judge needed any earlier notice of the exception to enable him to bear in mind the facts he was called upon to certify.' He makes no such pretention in his return. The whole matter was of recent occurrence, and the facts were no doubt firmly impressed on his mind and fresh in his recollection. The motion to remit the fine, which he took time to consider, made it necessary for him to recall, revolve and retain in mind all the facts and circumstances. He must have been as well prepared, as to knowledge, to certify the facts on the 27th as he could have been on the 25th, and he actually files with his return such certificate in a bill of exceptions made out by himself after service of the rule in this case.
To deny to the relator the right to except at the time *he desired and offered to do so, and have his exceptions embodied in a bill and made a part of the record, so as to enable him to have the judgment reviewed on a writ of error, if applied for and allowed, would, we think, be a harsh and rigorous application of the rule as to the time of tendering exceptions, not warranted by the circumstances of this case. The respondent is mistaken in supposing, as by the return he seems to have supposed, that it was “a matter of favor” to the relator to allow him to except to the judgme'nt of the court when he offered to do so on the 27th of the month. It was the relator’s absolute right then to except, and as clearly the duty of the respondent to sign a proper bill of exceptions, with a certificate of the facts.
The bill filed with the return was not a bill tendered by the relator, nor was he heard, or allowed the opportunity of being heard, in its preparation and settlement. He has the right of being heard in the settling of any bill which may be proper in the case.
We are therefore of opinion, that the rule against the respondent should be made absolute, and that a peremptory writ of mandamus should be issued, directed to the respondent, commanding him, on the tender by the relator of a bill of exceptions to the 'udgment rendered against him,, if the truth *151 of the case be fairly stated in said bill, to sign it; and if the truth of the case be not fairly stated therein, to proceed to settle the same, and when settled, to sign it; and in either case to order the bill so signed to be made a part of the record in the proceeding in which said judgment was rendered, and such will be the order of this court.
The judgment of the court was as follows:
This cause, which is pending in this court at its jilace of session at Richmond, having been fully heard, but not determined at said place of session, this day came here *the parties by their counsel, and the court having maturely considered the petition of the relator and exhibits filed with said petition, the rule awarded against the respondent, the return of the respondent to the ¡üiid rule and the exhibits filed with the said return, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the relator had the right to take exceptions to the judgment in the said petition and proceedings mentioned, rendered against him by the hustings court of the city of Manchester, and to tender a bill of exceptions to be signed by respondent as judge of the said hustings court, and that the exceptions taken by the relator to the said judgment were taken in due time; and although the respondent, as judge of said hustings court, cannot be required to sign the particular bills of exceptions filed with said petition, because it is shown by said return, which is not traversed, that the truth of the case is not fairly stated therein; yet, as when said bills were tendered the respondent did not suggest any alterations to be made therein, or then offer or proceed to settle the truth of the same, he should now be required to proceed with the aid of the relator, or his counsel, to settle the matter of a bill to be signed, and when settled to sign the same; and the writ of mandamus is the proper remedy to compel him so to proceed. It is therefore adjudged and ordered that the said rule be made absolute, and that a peremptory writ of mandamus be issued directed to the respondent, the Honorable William I. Clopton, judge of the hustings court of the city of Manchester, commanding' him, on tender by the relator of a bill of exceptions to the judgment aforesaid rendered against him by the said hustings court, if the truth of the case be fairly stated therein, to sign the same, and if the truth of the case be not fairly stated therein, to proceed with the aid of the relator, or his counsel, to settle the same, and when settled *to sign it, and in either case to cause said bill when so signed to be made a part of the record of the proceedings in which said judgment was rendered.
And it is further ordered that a copy of this order be duly served on the said respondent, and that such service shall have the same force and effect as the execution upon him of a peremptory writ of mandamus issued in pursuance thereof.
And it is ordered that this order be entered on the order-book here, and forthwith certified to the clerk of this court at its place of session aforesaid, who shall enter the same on his order-book.
Peremptory mandamus issued.