## Richmond.

COLLINS AND OTHERS v. CHRISTIAN, JUDGE.

APRIL 1, 1896.

1. MANDAMUS TO SIGN BILL OF EXCEPTIONS—*Jurisdiction of Court of Appeals—Issue of Fact.*—The Court of Appeals has power, by *mandamus*, to compel a judge of an inferior court to sign a proper bill of exceptions. If, on application for a *mandamus* to compel a judge to sign a bill of exceptions, he answers that he refused to sign the bill because it did not state the truth of the case, and the relator traverses this answer, an issue of fact is presented, to be determined upon the evidence, whether the bill did correctly set forth the truth of the case. Under the facts of the case at bar, the *mandamus* was awarded to compel the judge of the inferior court to sign one of the bills tendered him, after making a slight alteration therein, but not the other, which was allowed to remain as already settled and signed by him.

Application to award a writ of *mandamus* to compel Honorable D. A. Christian, judge of the County Court of Appomattox, to sign two bills of exceptions tendered to him on the trial of a misdemeanor lately pending in said County Court.

*Mandamus awarded.*

The opinion states the case.

*J. Singleton Diggs*, for the petitioner.

*H. D. Flood*, for the defendant.

CARDWELL, J., delivered the opinion of the court.

This is an application to this court to issue a writ of *man-*

*damus* to compel the Hon. D. A. Christian, judge of the County Court of Appomattox county, to sign two bills of exceptions tendered by the relators, E. F. Collins and others, to certain rulings of the judge at the trial of the relators under an indictment for a violation of the election laws, had in the County Court of Appomattox at the July term, 1895, which trial resulted in their conviction and a judgment against each for a fine of $15.

The notice and a copy of the petition having been served as required by section 3011 of the Code, the respondent filed his answer, and to this the relators filed exceptions, and the case comes on to be heard upon the petition and answer, the exceptions to the answer, and the depositions taken on behalf of the relators and the respondent.

The jurisdiction of this court by *mandamus* to compel the inferior courts to sign and seal bills of exceptions, or to amend such bills according to the truth of the case, is no longer an open question in Virginia. *Page* v. *Clopton, Judge,* 30 Gratt. 415, and authorities there cited.

From the petition it appears that on the morning after the trial had on July 5, 1895, counsel for relators prepared in full four bills of exceptions to certain rulings of the court, being Nos. 1, 2, 3, and 4, and left them with the clerk; and on the 10th of July they asked respondent to sign the bills, and that he promised to attend to the matter the next morning; that during the next day he was again asked to sign them, but did not. On the 15th he signed three of them, but for some reason unknown to relators' counsel, as they claim, declined then to sign Bill of Exceptions No. 1. The County Court continued in session until the 18th day of July, trying other cases, and on the 18th, which was the last day of the term, Bill of Exceptions No. 5, prepared by relators' counsel, containing the certificate of the evidence on the trial, was handed the respondent, or it may have been handed to him

on the 17th.   At all events, when the July term of his court
adjourned on the 18th, respondent still had Bill of Exceptions
No. 1, given  him on  the 10th, and No. 5, given him  on  the
17th or 18th, and up to  that time it is  claimed  by relators
that neither they nor their counsel had heard of any objection
to either bill, or of any reason why the respondent did not
sign them.

The answer shows that the statements as to when the bills
of exceptions were placed in the hands of the respondent are
substantially correct,  and, while the  respondent says that  he
told the counsel for  relators, when  bills numbered 1 and  5
were handed him, that he could not sign  them, because they
did not state the truth of the  case, he  does not say that he
pointed out to counsel wherein the bills were incorrect, nor
that he stated to them the corrections he desired to be made ;
and it further appears that on the  last  day of  the July term,
when the 5th bill of exceptions, setting out the testimony in
the case, was presented, the respondent  caused to  be entered
on the order-book, by consent of counsel, an order to the effect
that, when Bill of Exceptions No. 5 was agreed upon by coun-
sel (time being given them for the purpose), the bill was to
be signed and sealed by the court, and be considered and
treated as entered as of that day ; nothing  being  said in the
order or by counsel at that time with reference to Bill No. 1.
The answer then sets forth that after holding the bills of
exceptions in question for a considerable time, to enable coun-
sel for relators and the attorney for the Commonwealth to
agree upon Bill of Exceptions No. 5, respondent was compelled
to re-draft both bills to make them fairly state the truth of the
case ; " that he did this, but, without signing, he left them at
the court-house for the inspection of counsel for relators, when
notice was served upon him that an application would be
made to the judge of the Fifth Judicial Circuit to compel
him to sign the bills, and that he then went to the clerk's

office, signed them, and made answer to the *mandamus nisi* issued by the said judge."

There being a traverse of the answer, the first question is, does Bill of Exceptions No. 1, signed by the respondent, some time after the adjournment of the court, correctly set forth the truth of the case ?

This Bill No. 1, as originally presented to respondent on the 10th of July, 1895, is as follows:

" Be it remembered that on the trial of this cause [*Commonwealth of Virginia* v. *D. W. McKinney and Others*], and after Lamech Jones had been examined as a witness for the Commonwealth, the attorney for the Commonwealth offered in evidence the poll-book returned by the judges of election at Spout Springs Precinct to the clerk's office, and with the said book a certain type-written statement signed by Lamech Jones ; to the introduction of which defendants, by counsel, objected, upon the ground that it formed no part of any record, and was wholly incompetent and inadmissible on the trial, said Lamech Jones having already been examined as a witness touching the matters in said statement contained. And in support of said objection the defendants proved by George T. Peers, clerk, that said poll-book was received by him, duly sealed, as the returns from said precinct; that the same was opened on the second day after the election, by the board of election commissioners, according to law, in his office; that said statement was then no part of said book, and was not then seen; but that said board canvassed the returns from all the precincts, and ascertained the result and signed the papers accordingly; that on Monday, the 27th of May, at the second meeting of said board, the said statement of Lamech Jones was produced as a separate paper, read by the board, and ordered by the said board to be attached to said poll-book as a part thereof.   And thereupon,

after hearing said objections and testimony, the court over-ruled the defendants' objection, and admitted said statement as evidence, which was then read to the jury," &c., &c.

Bill No. 1, as signed by the respondent and left with the clerk to be made a part of the record, is as follows:

" Be it remembered that on the trial of this cause, and after Lamech Jones had been examined as a witness for the Commonwealth, the Commonwealth, by its attorney, offered in evidence the poll-book returned by the judges of election at Spout Springs Precinct to the clerk's office, said poll-book containing, among other things, a written statement, signed by Lamech Jones; to the introduction of said poll-book the defendants, by counsel, objected, which objection the court overruled, and admitted the said poll-book and all of its con-tents as evidence; to which ruling and action of the court the defendants except, and pray the court to sign and seal this their first bill of exceptions, which is done accordingly.

"D. A. CHRISTIAN, [Seal.]"

The difference between the two bills is readily perceived, and the omission in Bill No. 1, as signed, to state all the facts contained in the bill as presented to the respondent might prove to be a matter of vital importance to the relators in the appellate court.

The answer of the respondent does not set forth that he pointed out to counsel the objection that he had to Bill No. 1 when presented to him, but in his deposition given in his own behalf he states that he informed counsel that he could not sign No. 1, as it was not a true statement of the facts in the case, and pointed out to him wherein the bill was defective, and told counsel that, if he would correct it, he (respondent) would sign it; and it appears from other testimony adduced that the only correction required by respondent in this bill as

originally presented was the insertion, at the proper place in the bill, of the words : " But before adjourning reconsidered their action, and adjourned over until Monday, the 27th, for a final determination of the return."

It further appears that counsel for relators would not have objected to the insertion of these words in the Bill of Exceptions No. 1 had the respondent informed them that he desired these words to be inserted.

We are therefore of opinion that a peremptory writ of *mandamus* should issue, directed to the respondent, commanding him to sign, seal, and make a part of the record in the case of the Commonwealth against the relators, Bill of Exceptions No. 1, as presented by counsel for relators and hereinbefore set out, inserting therein at the proper place the words : " But before adjourning reconsidered their action, and adjourned over until Monday, the 27th, for a final determination of the return."

We are unable, by an inspection of Bill of Exceptions No. 5, as signed by the respondent, to determine whether it correctly sets forth the evidence at the trial, as this bill is not set out in full in the record ; but it appears that the only controversy over this bill is as to the manner in which the evidence given by Lamech Jones and John Overton is set forth. In addition to the statement by respondent that this bill does correctly set forth the truth of the case, the deposition of Lamech Jones is taken, wherein he says that he did not testify, as is claimed by relators, that D. W. McKinney, one of the relators, tried to get him to sign a paper containing statements like those in the statement of his testimony as made out by relators' counsel, but he refused to do it ; and he further testifies that he was shown his evidence given at the trial and as incorporated in Bill of Exceptions No. 5, as settled and signed by respondent, and that it correctly states his evidence as given.

It is further shown, we think, by the testimony of another witness, that the evidence given by John Overton at the trial was not as claimed by the relators, and hence the answer of the respondent should be conclusive as to Bill of Exceptions No. 5.

We are, therefore, further of opinion that a peremptory writ of *mandamus* should not issue commanding respondent to sign this bill as presented to him by relators' counsel, but that said bill, as settled and signed by respondent, should remain as so signed and as a part of the record in the case of the *Commonwealth* v. *Collins, McKinney, and Others.*

The order of this court will be, that a writ of *mandamus* issue, directed to respondent, commanding him to settle, sign, seal, and make it a part of the record in this case, Bill of Exceptions No. 1, in accordance with the opinion of this court as set forth above.

*Mandamus awarded.*