

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable M. F. Kieke
County Attorney
Lee County
Giddings, Texas

Dear Sir:

Opinion No. O-3388
Re: 1. Are parts furnished, labor
and repairs performed on trucks
used in connection with the con-
struction of a public building
classed as "material, apparatus,
fixtures, machinery or labor,"
within the contemplation of Arti-
cles 5472a and 5160, R.C.S.,
1925, as amended? 2. May the
holder of a claim, under said
statutes, assign the same before
filing same with the county clerk
of the county? 3. What formality
is necessary and to what extent
must it be itemized?

We are in receipt of your written request addressed
to this department, requesting our opinion. We quote from
your request:

"QUESTION: Are parts furnished, labor
and repairs performed on trucks used in con-
nection with construction of public building
classed as 'Material, apparatus, fixtures,
machinery or labor' as those items are contem-
plated in Articles 5472a and 5160 of the 1925
Revised Civil Statutes of the State of Texas?

"Can the holder of a claim assign his claim
before filing same with the County or County
Clerk, and bind the County or the bonding com-
pany? What formality is necessary and to what
extent must it be itemized?

"FACTS: A has a contract with the County
to construct a public building. He employs B to
haul gravel and sand, necessary in the construc-
tion. B has his own trucks and is paid by the

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable M. F. Kieke, Page 2

yards he hauls. B's trucks are in need of repairs from time to time but C, a garage, won't run the repair. A sends written orders to C to repair the trucks from time to time. A makes settlement with B for the hauling and deducts the amounts which A ordered C to make on B's trucks. A fails to pay C. C files a properly itemized account with the County and also one with the County Clerk, listing the items of repairs and parts, before the County pays A.

"MY OPINION: C has a good claim against the money still due by the County to A under the contract and also has a good claim against the Bonding Company, if filed within 90 days after performing the labor or furnishing the parts."

We have found the facts submitted by you to be rather incomplete. You supplemented your original request with some additional facts for which we are grateful. We have not been furnished a copy of the contract between A and the County, the nature of the agreement between A and B nor a copy of the assignment. We gather from your facts that the parts furnished and the labor performed by C in making the repairs on B's trucks was a necessary and normal part of the performance of A's written contract with the county and that A personally authorized C to furnish the parts and perform the labor necessary to make the repairs on B's trucks.

Article 5472a, Revised Civil Statutes, 1925, provides:

"That any person, firm or corporation, or trust estate, furnishing any material, apparatus, fixtures, machinery or labor to any contractor for any public improvements in this State, shall have a lien on the moneys, or bonds, or warrants, due or to become due to such contractors for such improvements; provided, such person, firm, corporation, or stock association, shall, before any payment is made to such contractor, notify in writing the officials of the State, county, town or municipality whose duty it is to pay such contractor of his claim."     (Underscoring ours)

Honorable M. F. Kieke, Page 3

Article 5472b, Revised Civil Statutes, reads:

"That no public official, when so notified in writing, shall pay all of said moneys, bonds or warrants, due said contractor, but shall retain enough of said moneys, bonds or warrants to pay said claim, in case it is established by judgment in a court of proper jurisdiction."

Article 5160, Revised Civil Statutes, 1925, as amended, says:

"Any person, firm or corporation entering into a formal contract with this State or its counties or school districts or other subdivisions thereof or any municipality therein for the construction of any public building, or the prosecution and completion of any public work, shall be required, before commencing such work, to execute the usual penal bond, with the additional obligation that such contractor shall promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract. Any person, company, or corporation who has furnished labor or materials used in the construction or repair of any public building or public work, and payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the State or any municipality on the bond of the contractor, and to have their rights and claims adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claims and judgment of the State or municipality. If the full amount of the liability of the surety on said bond is insufficient to pay the full amount of said claims and demands, then, after paying the full amount due the State or municipality, the remainder shall be distributed pro rata among said intervenors."

Honorable M. F. Kieke, Page 4

In the case of Thurber Construction Co. v. Kemplin (Civ. App.) 81 S. W. (2d) 103, writ of error dismissed, the court, in passing upon the various claims against funds held by the Highway Commission, said:

" . . . . Suffice it to say that only those items for labor, materials, etc., contemplated in article 5472a, as were reasonably necessary and proper, and furnished at just and reasonable prices, in the performance of the contract in question, constitute a proper charge against such fund. See Employers' Cas. Co. v. Rockwall County, 120 Tex. 441, 35 S. W. (2d) 690, 38 S. W. (2d) 1098."

We desire to call your attention to the case of Austin Bridge Co. v. Drake, (Civ. App.) 79 S. W. (2d) 677. In this case the question arose as to what a subcontractor is under the above statutes and whether labor performed for a subcontractor was included within the terms of Articles 5160 and 5472a. The court said:

"Each of said articles, 5160 as amended and 5472a, provides in effect that all persons supplying a contractor with labor or material in the prosecution of any public improvements, such as here under consideration, may fix a claim for such labor or material by complying with the provisions of said article. While one who furnishes material for the prosecution of such work may fix a claim for the value of such materials, ordinarily those who labor for such a furnisher of materials cannot fix a claim against the original contractor for the value of the services rendered by them in the manufacture of such materials. St. Louis, A. & T. Ry. Co. v. Mathews, 75 Tex. 92, 12 S. W. 976; St. Louis S. W. R. Co. v. Lyle, 6 Tex Civ. App. 753, 26 S. W. 264; Haynes v. Holland (Tenn. Ch. App.) 48 S. W. 400. On the other hand, one who labors for a subcontractor, in the prosecution of any part of the work required under the original contract, may, upon complying with the

Honorable M. P. Kiebe, Page 5

statutes, fix a claim for his wages. Whether or not one should be classed as a materialman, or as a subcontractor engaged in the prosecution of the work required of the original contractor, is sometimes a difficult question. In the case at hand, the question, we think, depends not only on the character of work contracted to be performed by West, the alleged subcontractor, but also on the policy adopted and pursued by the original contractor in the carrying out of the original contract. The Austin Bridge Company was under obligation to provide all materials necessary for the construction of the bridge. Gravel was an essential element. It could have purchased this material from a materialman engaged in that business, and in that event those who labored for such materialman in mining the gravel could not have fixed a claim against the original contractor for their wages. * * * * West was contracted with to mine, screen, and haul the gravel. He was not engaged in the business of furnishing such materials and did not furnish any of the material in this instance. He furnished nothing but labor. This labor was essential in order to enable Austin Bridge Company to carry out the contract in accordance with the plan adopted by it. Consequently, West was a subcontractor, and those who labored for him in such work supplied labor in the prosecuting of the original contract within the meaning of the statute. 60 C. J. 669; Heas & Skinner Eng. Co. v. Turney (Tex. Civ. App.) 207 S. W. 171-175; Republic Supply Co. v. Allen (Tex. Civ. App.) 262 S. W. 113. The fact that the labor was not performed at the site where the bridge was being constructed was of no consequence. * * * ."

See also Smith v. Texas Co. (Com. App.) 53 S. W. (2d) 774; Foty v. Rotchstein (Civ. App.) 60 S. W. (2d) 892.

Ordinarily the question of whether or not labor performed, or materials used in the prosecution of a public work is a question of fact for the jury. Winder Bros. v. Sterling (Sup. Ct.) 12 S. W. (2d) 127.

Under the holding in the foregoing cases, we think

Honorable N. F. Kieke, Page 6

that the materials furnished and the labor performed by C, on B's trucks, being expressly authorized by the general contractor A, if such was necessary to help carry out the terms and provisions of the written contract between A and the County and was necessarily furnished in prosecuting the public undertaking, were materials furnished and labor performed within the terms and provisions of Articles 5160 and 5472a.

We are enclosing a copy of Opinion No. O-1268, which we believe will be helpful to you with reference to the status of the County after the proper notice of claims has been filed. This opinion discusses in detail responsibility of the public officers after they have been served with a notice of a claim such as that noted in your inquiry.

With reference to the assignability of the claim, we cite the case of Southern Surety Co. of New York v. First State Bank, 54 S. W. (2d) 868, (Civ. App.), writ of error refused, which says:

"Appellant's proposition is that the assignment of a laborer's or materialman's claim prior to the perfection of the lien, by compliance with the terms of the statute creating it, confers upon the assignee no right to have or perfect the lien to which the assignor was entitled. * * *"

" * * * If he be denied the privilege of assigning his equitable right to fix the lien along with his debt, it will often result that he must either suffer the delay and expense incident to fixing the lien or else assign his claim at a discount and suffer the loss. He should be permitted to avail himself of the security which the statute gives him in the way most beneficial to himself, and, if he can better himself, without injury to the debtor, by giving his assignee the right to perfect the lien, he should be permitted to do so. Murphy v. Adams, 71 Me. 113, 36 Am. Rep. 299; Kinney v. Duluth Ore Co., 58 Minn. 455, 60 N. W. 23, 49 Am St. Rep. 528; Smoot v. Checketts, 41 Utah, 211, 125

Honorable N. P. Kieke, Page 7

P. 412, Ann. Cas. 1915C, 1113, par. 7; Sprague
Investment Co. v. Mouat Lumber & Investment Co.,
14 Colo. App. 107, 60 P. 179, 180; McDonald v.
Kelly, 14 R. I. 335, 338; Bristol Iron & Steel
Co. v. Thomas, 93 Va. 396, 25 S. E. 110. Under
our blended system a very liberal policy is
recognized in the assignment of both legal and
equitable rights. If a laborer can perfect his
lien and assign it with his claim, we know of
no reason why he should not be permitted to as-
sign his right to perfect his lien along with
his debt. This is particularly true where the
statute, as in this case, does not require the
one filing the claim to swear that the account
is correct. * * * We are of the opinion that
the bank as the assignee of Lanier had the right
to perfect the lien by filing the claim with the
state highway department."

You are therefore advised that, under the ruling
in the above case, claims, under Articles 5160 and 5472a, can
be assigned, if done in a legal manner, prior to the filing
of same with the county or county clerk.

We have been unable to find any specific statutory
requirement as to the form to be used in the assignment of
claims arising under Article 5160 or under Article 5472a.
Therefore, we believe the general rule giving the requisites
of valid assignments is applicable. We quote from 5 Tex. Jur.,
Sec. 18, pp. 22, 23, 24 and 25:

"An assignment under the statute providing
that 'the obligee, or assignee, of any written
instrument not negotiable by the law merchant
may transfer to another, by assignment, all the
interest he may have in the same,' need not be
in writing, but may be made orally. Likewise an
equitable assignment may be either in writing or
by parol, and since equity disregards mere form,
no particular words or kind of instrument is
necessary to effect the assignment; any language,
however informal, that shows an intention to
transfer the chose, so that it will be the pro-
perty of the transferee, will act as an equitable

Honorable M. F. Kieke, Page 8

assignment. Accordingly any order, writing or act which plainly makes an appropriation of a fund or debt may amount to an equitable assignment, the true test being whether the debtor would be justified in paying the debt to the person claiming to be the assignee."

We do not pass upon the validity of C's claim against the bonding company which is a private matter between two individuals.

We trust that in this manner we have fully answered your inquiry.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED MAY 8, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

By *Harold McCracken*

Harold McCracken
Assistant

HM:ej

